UNITED STATES of America, Appellee,

v.

Robert GARCIA, Jane Lee Garcia and Ralph Vallone, Jr., Defendants,

Robert Garcia and Jane Lee Garcia, Defendants–Appellants.

Nos. 1358, 1359, Dockets 91–1004, 91–1005.

United States Court of Appeals, Second Circuit.

Argued April 16, 1991.

Decided June 28, 1991.

Barry A. Bohrer, New York City (Morvillo, Abramowitz & Grand, Joel M. Cohen, Fischetti & Russo, of counsel), for defendants-appellants.

Michele Hirshman, New York City, Asst. U.S. Atty. for the Southern District of New York (Roger S. Hayes, Acting U.S. Atty. for the Southern District of New York, Helen Gredd, Asst. U.S. Atty., of counsel), for appellee.

Before TIMBERS, MESKILL and PRATT, Circuit Judges.

PRATT, Circuit Judge:

Defendants Robert and Jane Garcia appeal from an order of the United States District Court for the Southern District Court of New York, Leonard B. Sand, *Judge,* denying their motion, made on double jeopardy grounds, to bar their retrial and to dismiss the remaining counts of their indictment. For the reasons that follow, we affirm.

## BACKGROUND

In November of 1988 Robert and Jane Garcia were indicted on charges of bribery, receiving illegal gratuities, and both substantive and conspiracy counts of extortion in connection with Robert Garcia's congressional activities on behalf of the infamous Wedtech Corporation. *See United States v. Wallach,* 935 F.2d 445 (2d Cir.1991), *United States v. Biaggi,* 909 F.2d 662 (2d Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991), *United States v. Stolfi,* 889 F.2d 378 (2d Cir.1989). The alleged extortion was premised on two legal theories: (1) extortion by wrongful use of fear and (2) extortion under color of official right. At the close of the evidence at trial, the Garcias moved to dismiss the first theory for insufficient evidence. The district judge denied the motion and submitted both counts to the jury under a charge that permitted them to convict if they found either theory established by the proof.

The jury acquitted the Garcias of the bribery and gratuity charges, but convicted them of the substantive and conspiracy charges of extortion. Although given the opportunity by the court, neither the Garcias nor the government requested that special interrogatories be given to the jury in order to learn upon which theory of extortion the jury had based its guilty verdicts. The Garcias appealed, arguing that the first theory of extortion—extortion by wrongful use of fear—should not have been submitted to the jury, because there was insufficient evidence to support it. We agreed, and reversed the convictions. *United States v. Garcia,* 907 F.2d 380 (2d Cir.1990). In doing so, we explicitly pointed out that the Garcias, by making a motion under Fed.R.Crim.P. 29, had preserved their right to argue that there was insufficient evidence to support the first of the two extortion theories, and that "if there was insufficient evidence for one of the theories, then the verdict is ambiguous *and a new trial must be granted." Id.* at 381 (emphasis added).

We remanded to the district court "for further proceedings". *Id.* at 385. The Garcias then moved in the district court for an order barring retrial and dismissing the remaining counts of the indictment, claiming that a second trial would violate the double jeopardy protection of the fifth amendment to the constitution. The district court denied the motion, and the Garcias appeal.

## DISCUSSION

The double jeopardy clause of the fifth amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Despite its sweeping language, the clause "does not preclude the Government's retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction * * *." *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d

448 (1964). However, when an appellate reversal is based on insufficient evidence, a retrial is prohibited. *See Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–51, 57 L.Ed.2d 1 (1978) (the double jeopardy clause "precludes a second trial once the reviewing court has found the evidence legally insufficient * * * "). The basis for this distinction is clear: "[A]n appellate reversal [based on insufficient evidence] means that the government's case was so lacking that it should not have even been *submitted* to the jury * * * [since] as a matter of law * * * the jury could not properly have returned a verdict of guilty." *Id.* at 16, 98 S.Ct. at 2150. To allow a second trial under such circumstances would be "to afford the government an opportunity for the proverbial 'second bite at the apple.'" *Id.* at 17, 98 S.Ct. at 2150.

In reversing the Garcias' convictions, we concluded that there was insufficient evidence to support a conviction of extortion based on wrongful use of fear; therefore any attempt to retry them on this theory would violate the double jeopardy clause. If the Garcias are to be subjected to a second trial, then it can only be for extortion based on the theory of color of official right.

The Garcias claim, however, that a retrial on this theory would also violate their double jeopardy protections. Because they were acquitted on the bribery and gratuity counts, the Garcias argue, it is logical to interpret the jury's silence on the theory of extortion under color of official right as an acquittal: "[i]t is hardly speculation to conclude that it is highly probable that the jury's rejection of [the bribery and gratituty] charges, which required little proof beyond that of the Congressman's accepting the money in his official capacity, also caused it to reject the theory of extortion premised on the exact same conduct." For this reason, the Garcias conclude, a retrial on this theory would violate the double jeopardy clause.

The Garcias' argument has several defects. First, it stands in sharp contrast to the one they made at the time of their first appeal. They then asserted that their con-

victions should be reversed because there *was* ambiguity in determining which theory of extortion served as the basis for their convictions. In their brief at that time, they stated, "It is not possible to determine under which theory [of extortion] the jury convicted the defendants." And at oral argument, when asked about which extortion theory had been the basis of the convictions, the Garcias' lawyer stated: "We don't know what the jury did."

Now the Garcias press on us a position that is opposite to the one that they took on the first appeal. They argue that not only is it possible to determine under which theory of extortion the jury convicted them, but they confidently state that "[i]t is hardly speculation" to conclude that it is "highly probable" that the jury acquitted the Garcias of extortion under color of official right. But given their position at the first appeal, as well as our basis for reversing their convictions, their current argument borders on the frivolous. The jury's basis for the extortion conviction cannot be "ambiguous" for purposes of reversal, but an uncontroverted, "implicit acquittal" for double jeopardy purposes.

Second, in considering the Garcias' first appeal, we explicitly stated that if we were to decide that the evidence was sufficient for one of the two extortion theories, but insufficient for the other, "the verdict is ambiguous and a new trial must be granted." *Garcia,* 907 F.2d at 381. Concluding that the verdict was ambiguous, we reversed because there was "no way of knowing on which theory of extortion the Garcias were convicted." *Id.* at 385.

Third, in support of their position, the Garcias rely on *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), but this reliance is misplaced. In *Green,* the Supreme Court concluded that because the jury at the defendant's first trial "had refused to find him guilty on [the contested] charge", *Green,* 355 U.S. at 190, 78 S.Ct. at 225, despite having been "given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so", *id.* at 191, 78 S.Ct. at 225, there had been an

implicit acquittal. On this basis, the Court held that a retrial had violated the double jeopardy clause. *Id.* at 198, 78 S.Ct. at 229.

But the present case differs from *Green* in a significant way. There, the jury did not render a verdict on the disputed charge, causing the Court to construe its silence as an implicit acquittal. In the present case, however, the Garcias were convicted on the contested charge, and the only unanswered question was under which of two extortion theories the jury had based its conviction. And since the jury was never asked to state the basis for its conviction on the extortion charge, its silence on the question, unlike the silence of the jury in *Green*, signifies nothing. The conclusion that the Garcias ask us to accept regarding the extortion theory involves unacceptable speculation—which was precisely the reason that we reversed the Garcias' convictions in the first place.

Fourth, an implicit acquittal may not be inferred, because the elements of the crime of extortion differ from those for the crimes of bribery and illegal gratuity. "At least formally, bribery contains an element that extortion does not: that money was offered with the intention of influencing the recipient." *United States v. Holzer,* 840 F.2d 1343, 1351 (7th Cir.), *cert. denied,* 486 U.S. 1035, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). The same is also true of the charge of accepting an unlawful gratuity.

Fifth, it is neither unusual nor unacceptable for a jury to render inconsistent verdicts. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), *United States v. Dotterweich,* 320 U.S. 277, 279, 64 S.Ct. 134, 135, 88 L.Ed. 48 (1943), *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932), *United States v. Chang An–Lo,* 851 F.2d 547, 559–60 (2d Cir.), *cert. denied,* 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988). Therefore, we conclude, as we did on the Garcias' first appeal, that the verdict was ambiguous, and, in the words of the Garcias' lawyer, "there was just no way to know" what the jury was thinking when it rendered its verdict.

In rejecting the Garcias' motion, the district court applied the balancing test for implicit acquittals set out by us in *United States ex rel. Jackson v. Follette,* 462 F.2d 1041, 1049 (2d Cir.), *cert. denied,* 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 496 (1972). Under that test, in evaluating an implicit acquittal claim, the court "must strike a balance between fairness to society in obtaining a verdict on a proper indictment and the avoidance of undue vexation to the defendant by a retrial on both original charges * * *." *Id.* at 1049. However, even to reach "the point where we must weigh on a fine scale the competing interests of the public and [the defendant]", *id.,* we would first have to conclude that there is some basis for determining that there was an implicit acquittal, and as we have previously discussed, we find no basis for such a conclusion in this case.

Implicitly acknowledging this difficulty, the Garcias contend that in cases "where it has been impossible to determine whether the jury actually acquitted", courts have "resorted to weighing the competing interests of the parties to determine whether retrial should be barred." In arguing that the balancing test set out in *Jackson* should be extended beyond implicit acquittals to ambiguous jury decisions, the Garcias point to *United States v. Stanley,* 597 F.2d 866 (4th Cir.1979), a case in which the fourth circuit reversed on double jeopardy grounds a conviction based on a duplicitous count. *Id.* at 871–72. It is far from certain that the fourth circuit has interpreted *Stanley* as broadly as the Garcias do, *cf. United States v. Head,* 697 F.2d 1200, 1206 (4th Cir.1982), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983), and we are, of course, not bound by a holding of a sister circuit; furthermore, there was nothing duplicitous about the counts in the present case. The Garcias never claimed at trial that the counts were duplicitous, nor did they make this argument at the time of their first appeal. They now raise this issue in a footnote, and this feeble argument does not warrant discussion. For all of these reasons, *Stanley* does not apply.

Even if we were to conclude that there was an implicit acquittal in this case, the double jeopardy clause would not automatically bar reprosecution. As already discussed, in an implicit acquittal case, double jeopardy concerns are only implicated where there exists both the implication of an acquittal, and a conclusion that a retrial would not serve " 'the ends of public justice.' " *Jackson*, 462 F.2d at 1047 (citation omitted). In determining this latter question, one factor that should be considered is "what opportunity the defendant had to avoid the predicament by appropriate action." *Jackson*, 462 F.2d at 1049. Had the Garcias desired, they could have resolved the ambiguity involving the extortion theories. After the jury rendered its verdicts, the district court asked the defendants if they had any other questions for the jury: when none was suggested, the jury was dismissed with the Garcias' consent. Accordingly, the Garcias are incorrect in arguing that the government is to blame for the ambiguity created by the extortion theories, and there is no basis for concluding, as the Court did in *Green*, that "the jury was dismissed without returning any express verdict * * * and without [the defendant's] consent." *Green*, 355 U.S. at 191, 78 S.Ct. at 225.

Thus, here, as in so many other cases, the uncertainty over theories could have been clarified through the use of special interrogatories, which would have obviated the need for a retrial. Had the jury based its verdict on the "wrongful use of fear" theory only, then there would have been an implicit acquittal on the alternative theory and a retrial would have violated the double jeopardy clause. Had the jury clearly based its verdict on the theory of extortion under color of official right, or both theories, not only would there not have been a double jeopardy problem, but there would not even have been a reversal on the first appeal. Instead, we would have affirmed the convictions, because there was sufficient evidence to support a conviction for extortion under the official-right theory.

The Garcias correctly argue that they were under no obligation to request special interrogatories—but neither was the government. Our holding is simply that the Garcias cannot now complain of an ambiguity that they had the opportunity to clarify. Both sides ran a risk by not requesting interrogatories and thereby leaving the verdict ambiguous. The government's risk, which matured to reality, was that if the evidence was insufficient to support both theories of extortion, the conviction would be reversed. The Garcias' risk was that if such a reversal were obtained, the result would be not dismissal but a new trial on the remaining theory.

In denying the Garcias' motion, the district court stated that "[t]he issue is not one of fault but one of opportunities missed and the consequences that flow from the omission of all parties." We agree with the district court; we note, moreover, that in addition to the possibility that this was a situation of "opportunities missed", there is the possibility that the Garcias may have had a strategic reason for leaving unresolved the ambiguity in the jury's verdict. After all, the reversal of their convictions was based on this ambiguity. Having rejected the opportunity to clarify this ambiguity, and having secured a reversal on its strength, the Garcias cannot now disregard or deny its existence.

The order of the district court is affirmed; the mandate shall issue forthwith.