FILED

07/29/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 25-0321

OP 25-0321

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2025 MT 163

DANIELLE WOOD,

        Petitioner,

    v.

TWENTIETH JUDICIAL DISTRICT COURT,
SANDERS COUNTY, HON. JOHN A. MERCER,
Presiding,

        Respondent.

ORIGINAL PROCEEDING:    Petition for Writ of Supervisory Control
                                In and For the County of Sanders, Cause No. DC-19-07
                                Honorable John A. Mercer, Presiding Judge

COUNSEL OF RECORD:

        For Petitioner:

                Keenan Gallagher, Greg Rapkoch, Office of the State Public
                Defender, Kalispell, Montana

        For Respondent:

                Austin Knudsen, Montana Attorney General, Tammy K Plubell,
                Assistant Attorney General, Helena, Montana

                                  Decided:  July 29, 2025

Filed:

                               _____
                                           Clerk

Justice Ingrid Gustafson delivered the Opinion and Order of the Court.

¶1 Petitioner Danielle Wood seeks a writ of supervisory control directing the Twentieth Judicial District Court, Sanders County, to reverse its Order Denying Motion to Dismiss in its Cause No. DC-19-07. The District Court denied Wood's motion to dismiss this matter with prejudice after Wood argued that retrial would violate her right to avoid double jeopardy. We granted Wood's request to stay the underlying proceeding pending the resolution of this petition. *Wood v. Mont. Twentieth Jud. Dist. Ct.*, OP 25-0321, Order (Mont. May 13, 2025). The State of Montana has filed a response opposing Wood's petition.

¶2 We address the following issue:

*Whether double jeopardy prohibits a second prosecution of Wood for deliberate homicide after this Court reversed her conviction due to the erroneous submission of the State's accountability theory to the jury during Wood's first trial.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The State charged Wood by Amended Information with deliberate homicide, in violation of § 45-5-102(1)(a), MCA. The Amended Information was premised on two alternative theories of guilt—direct liability or accountability—and alleged Wood "committed the offense of Deliberate homicide by purposely or knowingly causing the death of Matthew LaFriniere, by shooting him with a firearm or being legally accountable for the commission of the offense of Deliberate homicide. (*See* Mont. Code Ann. §§ 45-2-301 and 45-2-302, MCA)." The case proceeded to a jury trial on January 14, 2021. At the close of evidence, Wood moved for dismissal of the charge, arguing the State had

2

presented insufficient evidence to prove her directly responsible or legally accountable for causing LaFriniere's death.  The District Court denied the motion.

¶4      The District Court instructed the jury on both theories of criminal liability.  Wood proposed a verdict form that, in the event the jury convicted her, would have required the jury to specify which alternative theory formed the basis of its unanimous verdict.  The District Court rejected the verdict form requested by Wood and furnished the jury with the State's proposed general verdict form instead, which allowed the jury to find Wood guilty or not guilty of deliberate homicide without differentiating between the direct liability and accountability theories.[1]  The jury returned a guilty verdict on the general form provided.

¶5      Wood appealed to this Court and requested a new trial, arguing that the District Court erred by submitting the accountability theory to the jury because the State presented insufficient evidence to support it.[2]  We agreed, and reversed her conviction.  *State v. Wood*, 2024 MT 318, 419 Mont. 503, 561 P.3d 945 (*Wood I*).  We remanded for a "new trial in the State's discretion."  *Wood I*, ¶ 53.

¶6      Upon remand, Wood moved for an order dismissing this case with prejudice, claiming that a second trial would violate the double jeopardy protections of the Fifth Amendment to the United States Constitution and Article II, Section 25, of the Montana

---

[1] The verdict form stated:

We the jury . . . enter the following unanimous verdict: [o]n the charge of DELIBERATE HOMICIDE, we . . . find the Defendant

Write NOT GUILTY or GUILTY above.

[2] Wood raised the following issue in her opening brief on direct appeal: "Did the district court err when it allowed an accountability charge to go to the jury when the State failed to put on evidence that [Wood] aided or abetted anyone else?"

Constitution, as well as the statutory double jeopardy protections set forth in § 46-11-503(1)(a), (c), MCA. At oral argument on April 15, 2025, the District Court asked the State if "there [was] a new information in this case now that doesn't have accountability in it[.]" The State responded, "[t]hat's correct."[3]

¶7 The District Court denied Wood's motion and set this matter for a jury trial. The court reasoned the State could retry Wood because "[t]he Montana Supreme Court had the opportunity in this case to dismiss it but instead expressly reversed and remanded for a new trial." Citing *State v. Cardwell*, 191 Mont. 539, 625 P.2d 553 (1981), the District Court concluded "[i]t is black letter law in Montana that '. . . a reversal of a judgment of conviction upon appeal and a retrial does not constitute double jeopardy.'" Regarding the statutory provisions, the District Court determined § 46-11-503(1)(a), MCA, did not apply because the State was not charging an offense that was known but not pursued in the first prosecution, and § 46-11-503(1)(c), MCA, did not apply because Wood's judgment of conviction was reversed. Wood's petition for writ of supervisory control followed.

## STANDARD OF REVIEW

¶8 This Court has supervisory control over all other courts in Montana. Mont. Const. art. VII, § 2(2). Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate. M. R. App. P. 14(3). The case must also meet one of three additional criteria, including when—as applicable to Wood's argument—the

---

[3] In the State's response to Wood's petition for writ of supervisory control, the State also represents it does not intend to retry Wood on the accountability theory.

4

"other court is proceeding under a mistake of law and is causing a gross injustice." M. R. App. P. 14(3)(a). We may exercise supervisory control to consider a defendant's double jeopardy challenge prior to a second trial. *State v. Burton*, 2017 MT 306, ¶¶ 18, 22, 389 Mont. 499, 407 P.3d 280; *see also Lamb v. Mont. Eleventh Jud. Dist. Ct.*, 2019 MT 274, ¶ 11, 397 Mont. 541, 452 P.3d 917 (considering petition that raised double jeopardy issue after mistrial); *Abney v. United States*, 431 U.S. 651, 662, 97 S. Ct. 2034, 2041 (1977) (concluding that a double jeopardy challenge must be reviewable before exposing accused to second trial). Accordingly, we proceed to address the merits of Wood's claim.

¶9 "A district court's denial of a motion to dismiss criminal charges on double jeopardy grounds presents a question of law, which we review for correctness." *State v. Stone*, 2017 MT 189, ¶ 10, 388 Mont. 239, 400 P.3d 692.

## DISCUSSION

¶10 *Whether double jeopardy prohibits a second prosecution of Wood for deliberate homicide after this Court reversed her conviction due to the erroneous submission of the State's accountability theory to the jury during Wood's first trial.*

¶11 The Fifth Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment to the United States Constitution, and Article II, Section 25, of the Montana Constitution, protect individuals from being placed twice in jeopardy for the same offense. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 2062 (1969); *State v. Frydenlund*, 2024 MT 187, ¶ 16, 418 Mont. 27, 555 P.3d 247. If a conviction is overturned on appeal due to trial error, *e.g.*, incorrectly instructing the jury, then double jeopardy does not bar the State from retrying the accused. *Burks v. United States*,

5

437 U.S. 1, 15, 98 S. Ct. 2141, 2149 (1978); *see also State v. Duncan*, 2012 MT 241, ¶ 11, 366 Mont. 443, 291 P.3d 106 (holding that new trial after appellate reversal generally does not place a defendant in new jeopardy).

¶12    Double jeopardy does, however, proscribe a second prosecution if the first results in "'any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense.'" *McElrath v. Georgia*, 601 U.S. 87, 96, 144 S. Ct. 651, 660 (2024) (quoting *Evans v. Michigan*, 568 U.S. 313, 318, 133 S. Ct. 1069, 1075 (2013)).  So, if an appellate court reverses a conviction because the government's evidence was "so lacking that [the case] should not have even been *submitted* to the jury," then double jeopardy precludes retrial of the accused.  *Burks*, 437 U.S. at 16, 98 S. Ct. at 2150 (emphasis in original); *see also Duncan*, ¶ 12 (quoting *Oregon v. Kennedy*, 456 U.S. 667, 677 n.6, 102 S. Ct. 2083, 2090 n.6 (1982)) (noting that reversal for insufficient evidence is an exception to general rule permitting retrial after successful appeal).

¶13    As a threshold issue, the State contends that we should not entertain Wood's petition because Wood's direct appeal raised a jury instruction issue.  Had Wood appealed the sufficiency of the evidence, the State claims it would have responded differently and directed this Court to the evidence of Wood's guilt presented at trial.  The State maintains double jeopardy does not bar retrial because this Court's reversal of Wood's conviction was predicated on instructional trial error.

¶14    We are not persuaded by the State's characterization of the accountability issue analyzed in *Wood I*.  The focus of the double jeopardy inquiry is whether, in overturning Wood's conviction, this Court "acted on its view that the prosecution had failed to prove

6

its case." *McElrath*, 601 U.S. at 96, 144 S. Ct. at 660 (citation omitted). Labels do not control our analysis in this context; rather, the substance of the ruling does. *McElrath*, 601 U.S. at 96, 144 S. Ct. at 660 (citations omitted). Notwithstanding our reference to instructional error, *Wood I*, ¶ 53, our decision was grounded on the dearth of trial evidence proving the second element of accountability, *i.e.*, that Wood and "some other person or persons affirmatively acted with and *in furtherance of* a '*common purpose*' before or during to contributorily aid or abet the commission of" deliberate homicide. *Wood I*, ¶¶ 41-44, 50 (emphasis in original) (quoting *State v. Gollehon*, 262 Mont. 1, 20-21, 864 P.2d 249, 261-62 (1993)). Because the State presented no evidence or argument supporting that element, we held the District Court "erroneously submitted the State's alternative deliberate homicide by accountability theory for jury consideration and determination." *Wood I*, ¶ 44. The *substantive* correctness of the jury instructions was not at issue. *Wood I*, ¶ 50. Rather, we determined the accountability instruction was *unsupported* by the evidence and "should have not been placed before the jury in the first instance." *Wood I*, ¶ 50. Our reversal of Wood's first conviction amounted to a ruling that the State's proof was insufficient to establish criminal liability for deliberate homicide by accountability. *See Burks*, 437 U.S. at 16, 98 S. Ct. at 2150 (applying double jeopardy after appellate court determined government's evidence was "so lacking that [the case] should not have even been *submitted* to the jury" (emphasis in original)). Thus, any attempt to retry Wood for

7

deliberate homicide by accountability would violate Wood's right to avoid double jeopardy. *See United States v. Garcia*, 938 F.2d 12, 14 (2nd Cir. 1991).[4]

¶15 Nevertheless, Wood's efforts to invoke double jeopardy to wholly prohibit a second trial for deliberate homicide, including by *direct* liability, are unavailing. Wood argues that, because "this Court has consistently treated accountability and responsibility as the same offense," she cannot be retried for deliberate homicide on either theory. In support of her position, Wood relies on *Sanabria v. United States*, 437 U.S. 54, 98 S. Ct. 2170 (1978), but that reliance is misplaced. The question in that case was whether, following the trial court's entry of a mid-trial judgment of acquittal for a single-count indictment, the government could subject the defendant to a subsequent trial on the same facts using a different legal theory. *Sanabria*, 437 U.S. at 64-65, 98 S. Ct. at 2178-79. The United States Supreme Court held that it could not. *Sanabria*, 437 U.S. at 74, 98 S. Ct. at 2184. Wood claims that, as in *Sanabria*, this Court's ruling as to the insufficient accountability evidence immunizes her from being retried under a direct liability theory. Wood, however, glosses over two crucial distinctions between *Sanabria* and the circumstances in this case.

¶16 First, the judgment of acquittal in *Sanabria* was entered on the entire count and found the defendant not guilty of the offense set forth in the indictment, "without specifying that it did so only with respect to one theory of liability." *Sanabria*, 437 U.S. at 67, 98 S. Ct. at 2180. Conversely, in *Wood I*, we expressly held the District Court erred by

---

[4] Although the State does not concede this point, it "does not intend to pursue an accountability theory at Wood's retrial for deliberate homicide." Even so, we felt it necessary to clarify the consequences of *Wood I* because the State did not provide this Court with an amended information or other documentation evidencing that intent.

8

submitting the State's "alternatively charged accountability to deliberate homicide by aiding or abetting theory for jury consideration and determination." *Wood I*, ¶ 53. Wood did not raise, nor did we consider or address, the issue of whether there was insufficient evidence to prove Wood acted independently in carrying out the offense.

¶17 Second, the defendant in *Sanabria* was acquitted due to insufficient proof of an element shared by both theories of liability; thus, the Supreme Court concluded double jeopardy would still bar a second prosecution even if the government had charged each theory of liability as separate counts. *Sanabria*, 437 U.S. at 72-73, 98 S. Ct. at 2183. Common elements were not at issue in *Wood I*. Although it is not "a technically separate and distinct offense apart from direct deliberate homicide," accountability to deliberate homicide by aiding or abetting another "requires proof beyond a reasonable doubt that: (1) a deliberate homicide occurred, and (2) the accused and some other person or persons affirmatively acted with and in furtherance of a common purpose before or during the homicide to aid or abet the commission of a deliberate homicide." *Wood I*, ¶ 40 (emphasis removed; internal citations and quotations omitted). Our analysis in *Wood I* bears only on the absence of proof as to the second accountability element, which is unique to that theory:

> [T]he State presented no evidence or argument at trial even suggesting that some third party shot and killed the decedent LaFriniere, or that Wood actively assisted some other person in the planning or commission of the shooting of LaFriniere, with and in furtherance of *their* common purpose to cause his death. . . . [T]he State merely pointed out Instruction Nos. 18-20 authorizing the jury to alternatively find that, if Wood did not personally shoot LaFriniere, she somehow acted in concert with someone else with the purpose to cause his shooting death.

*Wood I*, ¶ 42 (emphasis in original).

9

¶18     We find the Supreme Court of Washington's discussion in *Washington v. Ramos*, 184 P.3d 1256 (Wa. 2008) instructive to our resolution of this issue.  In that case, the court concluded that a defendant could be retried under an alternative theory of guilt after his initial conviction was overturned on appeal without running afoul of double jeopardy. *Ramos*, 184 P.3d at 1257.  The court reasoned:

> The alternative means principle dictates that when a jury renders a guilty verdict as to a single crime, but one of the alternative means for committing that crime is later held to be invalid on appeal and the record does not establish that the jury was unanimous as to the valid alternative in rendering its verdict, double jeopardy does not bar retrial on the remaining valid alternative mean.  This is the case even when one alternative mean has been reversed on appeal due to a finding of insufficient evidence, a finding that has the same double jeopardy implications as an outright acquittal in other circumstances.

*Ramos*, 184 P.3d at 1259 (citations omitted).

¶19     In this case, we did not reverse Wood's conviction because there was insufficient evidence that she independently committed the crime of deliberate homicide.  Rather, we reversed Wood's conviction only because it was possible the jury found her guilty of the accountability alternative, which was not supported by the evidence.  *Wood I*, ¶ 50.  We acknowledged it was potentially possible that "the jury unanimously found Wood guilty of direct deliberate homicide."  *Wood I*, ¶ 50.  Accordingly, allowing retrial under the circumstances of this case serves society's interest in prosecuting the accused while protecting the accused's right to a fair trial.  *United States v. Tateo*, 377 U.S. 463, 466, 84 S. Ct. 1587, 1589 (1964).

¶20     Consistent with our analysis here, § 46-11-503(1)(a), (c), MCA, do not protect Wood from a second prosecution for deliberate homicide by direct liability because Wood

10

was not acquitted, this Court made no determination as to the sufficiency of direct liability evidence, and her conviction was reversed.

¶21 Wood faults the District Court for relying on *Cardwell* and failing to reconcile state precedent with federal double jeopardy authority. Our task, however, is to determine whether the court reached the right result, regardless of whether we agree with its rationale. *State v. Christensen*, 2014 MT 294, ¶ 12, 377 Mont. 7, 338 P.3d 45. The District Court reached the correct result in this case. As previously discussed, we overturned Wood's first conviction because the prosecution failed to introduce any evidence proving deliberate homicide by accountability, and due to the general verdict form, we were unable to determine whether the jury relied upon that theory to reach its guilty verdict. *Wood I*, ¶¶ 50-51. We did not address or review the sufficiency of the evidence for direct liability. Given the State's representation to the District Court that it intends to drop the accountability theory, it was not unreasonable for the District Court to address Wood's arguments without performing an independent double jeopardy analysis of each theory. The District Court did not err by denying Wood's motion to dismiss because a second prosecution for deliberate homicide by direct liability does not violate Wood's right to avoid double jeopardy.

## CONCLUSION

¶22 We accept Wood's petition for supervisory control. Double jeopardy does not prohibit a second prosecution of Wood for deliberate homicide by direct liability.

11

¶23 IT IS THEREFORE ORDERED that Wood's Petition for Writ of Supervisory Control is GRANTED, and the District Court's order denying Wood's motion to dismiss on double jeopardy grounds is AFFIRMED.

¶24 IT IS FURTHER ORDERED that the stay imposed by this Court upon the Twentieth Judicial District Court, Sanders County Cause No. DC-19-07, is lifted.

¶25 This matter is REMANDED to the District Court for further proceedings consistent with this Opinion and Order.

The Clerk is directed to send a copy of this Opinion and Order to all counsel of record in this matter and in the Twentieth Judicial District Court, Sanders County Cause No. DC-19-07, and to the Honorable John A. Mercer, presiding District Court Judge.

DATED this 29th day of July, 2025.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ LAURIE McKINNON